UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS JEAN HOWARD,

    Petitioner,

v.

JAMES SCHIEBNER, *Warden*,

    Respondent.

Case No. 19-13525
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING
PETITION FOR A WRIT OF HABEAS CORPUS [1, 6]**

---

Thomas Jean Howard stabbed a man and threatened another with a knife at a gas station. On February 11, 2016, a state court jury convicted him of assault with intent to commit murder, Mich. Comp. Laws § 750.83, assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84, two counts of felonious assault, Mich. Comp. Laws § 750.82, and two counts of assault and battery, Mich. Comp. Laws § 750.81. The convictions were affirmed on direct appeal.

On November 26, 2019, Howard filed a habeas petition in this Court under 28 U.S.C. § 2254. (ECF No. 1.) He raised seven exhausted and four unexhausted claims in his petition. Howard was granted a stay of proceedings (ECF No. 4) so that he could exhaust additional claims in the Michigan state courts. After completing state post-conviction review, Howard successfully moved to reopen his habeas case. (ECF No. 6.)

In total, Howard raises thirteen claims, which include all claims raised in the state courts on direct appeal and in his motion for relief from judgment. Because the claims are without merit, the Court DENIES the petition.

## I. Background

As the facts detailed by the Michigan Court of Appeals are presumed correct on habeas review, *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)), the Court recites them here:

> Howard's convictions arise from an incident at a Clark gas station in Detroit on August 24, 2015. The two complainants, Darrick Jefferson and his uncle Desmond Thomas, rode their bicycles to the gas station around 10:00 p.m. While Jefferson and Thomas were outside the store entrance, Howard drove to the pump nearest the entrance in a blue Chevrolet Trailblazer. Howard's girlfriend, Wendy Alanis, was in the front passenger seat, and Alanis's nephew and niece were in the back seat. A verbal altercation occurred between Jefferson and Thomas and the occupants of the Trailblazer. There was no dispute at trial that Howard became involved in a physical confrontation with Jefferson, although the parties did dispute the circumstances of that altercation.
>
> According to Jefferson and Thomas, Alanis looked at them in a hostile manner. When they asked her why, Howard accused them of "f***ing with" his wife. The argument escalated into a physical altercation in which Howard stabbed Jefferson several times with a knife. Thomas and Jefferson denied threatening Howard or his family. They testified that they tried to calm Howard down by suggesting that they could discuss the conflict.
>
> Howard and Alanis denied that they started the confrontation. Howard testified that Thomas and Jefferson accused someone in the Trailblazer of saying something, and then demanded that this person get out of the vehicle. Howard said he tried to explain to them that there were no other adult males in the car, but they continued to demand that "the guy" get out. Howard and Alanis testified that they believed Thomas and Jefferson had guns because they had their hands concealed under their clothing. They suspected that Thomas and Jefferson intended to start trouble because Jefferson was wearing a heavy coat on a hot August night and Thomas was dressed entirely in black. Howard testified that

2

he stabbed Jefferson in self-defense because Thomas had threatened his family and he believed Jefferson had a gun under his coat. Mark Hunt, an acquaintance of Howard, came from another vehicle and supported Howard by pushing and punching Thomas and Jefferson. Jefferson and Thomas eventually escaped on foot.

The incident was recorded on the gas station's surveillance camera. The video was played at trial, but did not include any sound. At trial, Jefferson and Thomas offered testimony narrating, explaining, and commenting on events depicted in the video. Howard's parole officer, Tamela Monday, also identified Howard and Hunt in the surveillance video for the purpose of establishing that they were associated with each other, but her status as Howard's parole officer was not disclosed to the jury.

*People v. Howard*, No. 332337, 2018 WL 842893, at *1 (Mich. Ct. App. Feb. 13, 2018).

After the jury returned a guilty verdict, the trial court sentenced Howard as a fourth habitual offender, Mich. Comp. Laws § 769.12, to concurrent prison terms of 25 to 40 years for assault with intent to commit murder, 6 to 10 years for assault with intent to do great bodily harm, 2 to 4 years for felonious assault, and time served for assault and battery.

Howard appealed his convictions to the Michigan Court of Appeals. He raised seven issues concerning substitution of counsel, evidentiary error, judicial bias, prejudicial evidence, ineffective assistance of trial counsel, prosecutorial misconduct, and cumulative error. The court affirmed his convictions. *Howard*, 2018 WL 842893. On October 30, 2018, the Michigan Supreme Court denied Howard leave to appeal. *People v. Howard*, 918 N.W.2d 811 (Mich. 2018).

On November 20, 2019, Howard filed the present petition, which raised the seven claims presented to the state appellate courts as well as four unexhausted claims. (ECF No. 1, PageID.4.) Howard simultaneously filed a motion to hold his

3

petition in abeyance pending exhaustion of those four claims. (ECF No. 2.) On January 2, 2020, the Court granted the motion. (ECF No. 4.)

On February 12, 2020, Howard went back to state court to file a motion for relief from judgment. He raised six claims on collateral review: (1) the prosecution and trial court erred in indicating that Howard had a "duty to retreat" and trial counsel failed to object or to request an appropriate jury instruction; (2) convictions of assault with intent to murder, assault with intent to commit great bodily harm, and assault and battery violated the Double Jeopardy Clause; (3) convictions of both assault with intent to commit great bodily harm and felonious assault are inconsistent and mutually exclusive; (4) trial counsel was ineffective for failing to file an interlocutory appeal after the district court denied the motion to quash; (5) appellate counsel provided ineffective assistance by failing to raise the unexhausted issues, and (6) Howard was entitled to resentencing. (ECF No. 13-13, PageID.1472; ECF No. 13-14, PageID.1489–1490.)

On March 11, 2021, the trial court granted Howard's motion for relief from judgment in part, ruling that Howard's assault-based convictions failed the same elements test in violation of the Double Jeopardy Clause. (*Id.* at PageID.1508–1509.) (ECF No. 13-17, PageID.1503.) With respect to the duty to retreat argument, the trial court rejected the claim under Michigan Court Rule 6.508(D)(1), ruling that the court could not explore this claim because it had been fully adjudicated by the Michigan Court of Appeals. (*Id.* at PageID.1507.) The trial court denied the inconsistent verdict,

resentencing, and ineffective assistance of trial and appellate counsel claims on the merits. (*Id.* at PageID.1509–1514.)

Howard filed a delayed application for leave to appeal in the Michigan Court of Appeals. The appellate court denied that application on December 27, 2021, finding that Howard failed to show that the trial court erred in denying the motion for relief from judgment. (ECF No. 13-20, PageID.1802.) On May 31, 2022, the Michigan Supreme Court denied the application for leave to appeal the Court of Appeals' order. *People v. Howard*, 974 N.W.2d 200 (Mich. 2022).

In 2022, Howard returned to this Court and moved to reopen his case. (ECF No. 6.) The Court construed his motion as seeking to supplement his original petition with his newly exhausted claims. That is, in his initial petition, Howard raised seven exhausted and four unexhausted claims. As for the newly exhausted claims, that includes six claims in total (four unexhausted claims from the initial petition and two additional ones). The Court thus understands that the supplemented petition advances the following thirteen claims:

I.     The trial court's repeated failures to investigate petitioner's claims of dissatisfaction with his counsel, arising from counsel's lack of diligence and disinterest, coupled with the court's sub silentio summary denials of petitioner's requests for substitution of counsel, violated petitioner's constitutional rights to counsel, and entitles him to a new trial.

II.    Over defense objection, the trial court permitted various witnesses, the prosecutor, and the court itself, to offer opinions and comments regarding the identification of the petitioner and the contents of the surveillance video throughout the trial. This evidentiary error invaded the province of the jury and denied petitioner due process of law.

III.    The trial judge's questions, biased commentary, hostility and belittling of the defense before the jury pierced the veil of judicial impartiality. The petitioner was thereby deprived of his constitutional right to a fair and impartial trial.

IV.    The defense objected to admission of graphic photographs of the complainant's injuries. The trial court admitted the photographs without inquiring whether the probative value substantially outweighed unfair prejudice. The court erred in abdicating its discretionary power, and denied the due-process right to a fair trial.

V.    Ineffective assistance of counsel denied petitioner a fair trial.

VI.    The prosecutor's misconduct in failing to establish compliance with Mich. Comp. Laws § 767.40A (5) denied petitioner a fair trial.

VII.    The cumulative effect of error denied petitioner a fair trial.

VIII.    Defendant was denied the effective assistance of counsel and his due process right to a fair trial where the trial court repeatedly demonstrated its impartiality by invading the role of the prosecution; questioning Defendant's theory of the case and erroneously indicating that he had a "duty to retreat," prior to using other than deadly force.

IX.    Defendant was denied his Sixth Amendment right to the effective assistance of counsel and his right to a properly instructed [jury] where counsel failed to object to the trial court's repeated assertions that he had a "duty to retreat" prior to using other than deadly force; and, failed to request the appropriate jury instruction under the Michigan Self-Defense Act.

X.    Defendant's right to be free from double jeopardy was violated where he was convicted of assault with intent to murder (AWIM) and assault and battery; and, assault with intent to commit great bodily harm (AWIGBH) and assault and battery, for each respective assault.

XI.    Defendant's conviction for both assault with intent to commit great bodily harm less than murder (AWIGBH) and felonious assault are inconsistent because they are mutually exclusive; trial counsel was ineffective for failing to challenge the inconsistent verdict.

XII. Defendant was denied his constitutional right to the effective assistance of counsel on appeal, thereby establishing the requisite "cause" of MCR 6.508(D)(3)(a), for failing to raise grounds I-IV on appeal or in a prior motion for relief from judgment. Defendant was prejudiced by the much more onerous standard of review of MCR 6.508, and but for the alleged error(s), Defendant would have had a reasonably likely chance of an opinion on the merits on direct appeal and a new trial.

XIII. Due process entitles defendant to resentencing without the 4th felony offense habitual enhancement; and, appellate counsel was ineffective for failing to advance this claim on direct appeal satisfying the requisite "cause" of MCR 6.508(D)(3)(a), resulting prejudice is shown where the sentence would have been substantially lower absent the habitual offender enhancement.

(ECF Nos. 1, 6.)

On February 1, 2023, the Court re-opened the case. (ECF No. 8.) Respondent filed an answer (ECF No. 12) and Howard filed a *pro se* reply brief (ECF No. 15).

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). Thus, if a claim was already "adjudicated on the merits in State court," this Court cannot grant relief on the basis of that claim unless the habeas petitioner "show[s] that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 584 U.S. 122, 125 (quoting 28 U.S.C. § 2254(d)). The Supreme Court has emphasized that "an

unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 101 (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). Therefore, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* This is "meant to be" a "difficult [standard] to meet." *Id.* at 102. Additionally, a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), with review being "limited to the record that was before the state court," *Cullen*, 563 U.S. at 181. Here, because the Michigan state courts adjudicated each of Howard's claims on the merits, AEDPA deference applies.

### III. Discussion

### A. Procedural Default

As an initial matter, Respondent argues that several of Howard's claims are procedurally defaulted. But a district court may bypass a procedural default analysis "when the merits are easily resolvable against the petitioner while the procedural issues are complicated." *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020). Here, the Court concludes that it is more efficient to proceed directly to the merits of Howard's claims.

### B. Merits

### 1. Substitution of Counsel (Claim 1)

Howard first claims that he was deprived of his right to the assistance of counsel when the trial court failed to inquire into his written requests for substitute counsel. (ECF No. 1, PageID.25–36.)

In the first letter dated November 18, 2015, Howard asked the trial court "to respectfully appoint [him] an attorney." (ECF No. 13-18, PageID.1695.) Howard explained that his retained attorney "made no effort," "his representation [was] lacking," and "[they] could not reach an agreement." (*Id.*) At the next hearing held on January 11, 2016, the trial court questioned Howard about his indigency affidavit and asset disclosure for the purpose of investigating his eligibility for appointed counsel. (ECF No. 13-5, PageID.618–626.) The trial court did not acknowledge or address the letter, nor did Howard raise any issues with counsel or request that the court address his complaint. The trial court then appointed the same defense counsel to the case, allowing the representation to continue. (*Id.*)

That same day, Howard submitted a second letter to the chief judge of the Wayne County Circuit Court, complaining that the trial judge was biased and failed to address his November 2015 letter. (ECF No. 13-18, PageID.1696.) He requested a new attorney because he believed "[his] lawyer, the prosecutor, and the judge already determined [his guilt]." (*Id.* at PageID.1697.) The chief judge responded that he forwarded the letter to the trial judge. (*Id.* at PageID.1698.) On January 29, 2016, Howard submitted a third letter to the trial judge. That letter again requested that his attorney "step down" from his case for failing to raise numerous issues, file motions, and investigate certain issues that Howard brought up months prior. Howard complained that his attorney was not "taking his case seriously." (*Id.* at PageID.1699–1700.) His jury trial then began on February 8, 2016, without the letters being addressed.

The Michigan Court of Appeals rejected Howard's substitute counsel claim. The appellate court found, for the following reasons, that despite the trial court's error in failing to acknowledge Howard's complaints, he did not establish good cause for relief:

> Howard's letters raised general complaints that counsel was inattentive to his case, but did not state that there were any disagreements regarding trial fundamental tactics or other facts establishing good cause. Howard complained in his letter to the chief judge that counsel did not object when the trial court stated that it had already decided that Howard was guilty. However, the statement in question was made in the context of the trial court's review of a motion to quash and Howard's letter reflects that he did not understand the legal context of such a motion. Likewise, on appeal, Howard has not stated any specific facts concerning disagreement with defense counsel.

*Howard*, 2018 WL 842893, at \*3.

Howard does not show that the Michigan Court of Appeals' decision was contrary to, or unreasonably applied, clearly established federal law. "The Sixth Amendment right to assistance of counsel is a fundamental right . . . essential to a fair trial." *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1351 (6th Cir. 1993). "[T]he Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624–25 (1989)). But "[t]he right to the assistance of counsel at trial does not guarantee that a criminal defendant will be represented by a particular attorney." *Serra*, 4 F.3d at 1351 (citing *Caplin & Drysdale, Chartered*, 491 U.S. at 624). "A criminal defendant who desires and is financially able to retain his own

10

counsel 'should be afforded a fair opportunity to secure counsel of his own choice.'" *Id.* (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). "[A]n indigent defendant, while entitled to adequate representation, has no right to have the Government pay for his preferred representational choice." *Luis v. United States*, 578 U.S. 5, 12 (2016).

Nevertheless, even an indigent criminal defendant may receive substitute counsel if he shows good cause, which can include a conflict of interest, a total breakdown in communication, or an irreconcilable conflict between the defendant and his or her lawyer. *Henness v. Bagley*, 644 F.3d 308, 321 (6th Cir. 2011). The success of a motion for substitution of counsel largely turns on the timeliness and reason for the request. *See Martel v. Clair*, 565 U.S. 648, 663 (2012). The substitution inquiry hinges on the facts, so a trial court's decision "deserves deference." *Id.* at 664.

First, as noted by the Michigan Court of Appeals, the trial court failed to conduct an inquiry on Howard's complaints for substitute counsel. There is no clearly established federal law from the Supreme Court, however, requiring an inquiry by a state trial judge into the nature of a defendant's dissatisfaction with his or her attorney prior to denying a motion for substitution of counsel. *See James v. Brigano*, 470 F.3d 636, 643 (6th Cir. 2006) (reversing a grant of habeas relief because the inquiry requirement was not clearly established federal law); *Peterson v. Smith*, 510 F. App'x 356, 366 (6th Cir. 2013) ("[T]he failure [of the trial court] to [make a sufficient inquiry] could not be the basis for relief under AEDPA because such inquiry is not required by clearly established Supreme Court precedent.") (citing *Brooks v. Lafler*, 454 F. App'x 449, 452 (6th Cir. 2012)) (per curiam); *James*, 470 F.3d at 643. Thus, in

11

the absence of a showing that a habeas petitioner received ineffective assistance of counsel at trial, a state trial judge's failure to inquire into a habeas petitioner's complaints against his or her counsel before denying a motion for substitution of counsel does not entitle the petitioner to habeas relief. *See Peterson v. Smith*, 510 F. App'x. 356, 366–67 (6th Cir. 2013) (collecting cases). As discussed in greater detail below, Howard has not shown that he received ineffective assistance of counsel at trial.

Second, as the Michigan Court of Appeals eluded to, Howard's complaints against counsel concerned generalized and conclusory disagreements on trial strategy, including the failure to file unspecified motions, timely investigate certain issues, and raise issues with the court. (ECF No. 13-18, PageID.1699–1700.) Howard, however, did not present the Michigan state courts with any facts suggesting there was a "complete breakdown in communication" that prevented him from receiving an adequate defense. *United States v. Vasquez*, 560 F.3d 461, 468 (6th Cir. 2009); *United States v. Justice*, 14 F. App'x 426, 430–31 (6th Cir. 2001); *Adams v. Smith*, 280 F. Supp. 2d 704, 720 (E.D. Mich. 2003).

True, the limited record evidence regarding the extent of Howard's communication issues with counsel may be attributable, at least in part, to the trial judge's failure to investigate the issue further, which the Michigan Court of Appeals found was an error. But Howard has not shown before the trial court, or this Court, that his complaints against counsel involved irreconcilable conflict or total lack of communication, as opposed to differences of opinion or trial strategy. For instance, in

12

his brief, Howard states, "Petitioner and his attorney were unable to come to an agreement on a solid trial strategy." (ECF No. 1, PageID.34.) This appears to be a disagreement on trial tactics, not irreconcilable conflict. *See United States v. Littlejohn*, No. 22-3717, 2024 U.S. App. LEXIS 16371, at *6 (6th Cir. July 1, 2024) (substitution of counsel based on alleged ineffective assistance must still be premised on ineffective assistance that results in a "complete breakdown in communication"); *Nieman v. Douglas*, No. 24-1191, 2025 U.S. App. LEXIS 11987, at *12 (6th Cir. May 16, 2025) ("A disagreement between an attorney and client over the attorney's strategic decision not to call several witnesses is not a basis for substitution of counsel where the disagreement does not prevent all communication between them.") (citing *United States v. Collado-Rivera*, 830 F. App'x 161, 165 (6th Cir. 2020)); *United States v. Swinney*, 970 F.2d 494, 499 (8th Cir. 1992) ("Although Willis and his attorney differed on trial tactics and strategy, and expressed frustration with each other, the record does not reflect an irreconcilable conflict or complete breakdown in communication between them.").

Because the record here does not demonstrate that the disagreement between Howard and his attorney rose to the level of a conflict sufficient to justify the substitution of counsel, s*ee United States v. Sullivan*, 431 F.3d 976, 981 (6th Cir. 2005), Howard is not entitled to habeas relief on this claim.

### 2. Testimony Invading Province of the Jury (Claim 2)

In his second claim, Howard asserts that the trial court denied him a fair trial by effectively allowing the presentation of witness testimony that invaded the

province of the jury. Specifically, Howard challenges the prosecutor and the trial court's direct questions to witnesses Desmond Thomas and Darrick Jefferson regarding what they saw in the surveillance video and their identification of Howard. Howard also challenges other witnesses' identification testimony. (ECF No. 1, PageID.38–45.)

Howard raised this claim on direct appeal. After discussing the standard for the admission of opinion testimony under Michigan Rule of Evidence (MRE) 701, the Michigan Court of Appeals found that the testimony was properly admitted because Thomas and Jefferson were present when the assault occurred, and therefore, had personal knowledge of the incident. *Howard*, 2018 WL 842893, at *4. The appellate court determined that Thomas and Jefferson did not explain the events on the video to the jury as if they had not seen it before; rather, they "used the video to complement their own testimony explaining events they participated in." *Id.* Even if Thomas and Jefferson had provided their opinions on what occurred in the video, this would not have invaded the province of the jury because their testimony was based on their personal perception of the assault. *See, e.g.*, *United States v. Dickens*, 748 F. App'x 31, 43–44 (6th Cir. 2018).

This decision was not an unreasonable application of federal law. To the extent Howard claims that the witnesses' testimony violated the Michigan Rules of Evidence, it is not the role of federal habeas courts "to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). A federal court is limited in federal habeas review to deciding whether a state

14

court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Federal habeas courts generally do not question errors in the application of state law, especially rulings regarding the admissibility of evidence. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000); *see also Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) ("a claim that the state trial court erred in the application of state law, specifically a ruling on evidence . . . is simply not cognizable on habeas review"). But Howard's request asks the Court to do just that. *See Reid v. Rewerts*, No. 21-1133, 2021 WL 6881291, at \*2 (6th Cir. Sept. 9, 2021).

It is true that "[a]n evidentiary ruling may violate due process—and thus warrant habeas relief—only where it 'is so egregious that it results in a denial of fundamental fairness.'" *Hudson v. Lafler*, 421 F. App'x 619, 628 (6th Cir. 2011) (quoting *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)). But "the Supreme Court has defined 'very narrowly' the category of infractions that violate 'fundamental fairness.'" *Bagley*, 500 F.3d at 522 (6th Cir. 2007) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)); *see also Hudson*, 421 F. App'x at 628 ("Erroneously admitting evidence under state evidence rules amounts to a due process violation in a federal habeas proceeding only in extraordinary cases."). With respect to Howard's argument that the identification testimony "invaded the province of the jury," both federal and Michigan law permit a witness to offer lay-opinion testimony identifying a defendant from a videotape or surveillance photograph if the witness has prior familiarity with the defendant and is more able than a jury to identify the defendant from the videotape or photograph. *See United States v. Houston*, 813 F.3d 282, 291–

92 (6th Cir. 2016); *People v. Fomby*, 831 N.W.2d 887, 890–91 (2013). Moreover, Howard's identification was not at issue at trial. The Michigan Court of Appeals reasonably determined that any other identification testimony was proper because "Howard's identity was not disputed." *Howard*, 2018 WL 842893, at \*5. By his own testimony, Howard admitted that he was present at the Clark Gas Station and that it was him in the video. (ECF No. 13-8, PageID.1218, 1238.) Allowing this testimony simply does not rise to the level of a due process violation. Howard therefore fails to demonstrate entitlement to habeas relief on his second claim.

### 3. Judicial Bias (Claims 3 and 8)

In his third and eighth claims, Howard asserts that the trial court violated his right to a fair trial through a lack of impartiality. Specifically, he challenges the trial court's extensive questioning of Jefferson, expression of skepticism toward Howard's self-defense theory, and perceived hostility towards defense counsel. (ECF No. 1, PageID.46–52; ECF No. 6, PageID.113–132.)

Reviewing for plain error, the Michigan Court of Appeals rejected these arguments, concluding that:

> Howard has failed to establish that the trial court's conduct pierced the veil of judicial impartiality. Furthermore, Howard has not demonstrated that the court's conduct affected his substantial rights because the court's jury instructions were sufficient to advise the jury that the court's questions and comments were not intended to express a personal opinion about the case, that the jury should disregard any perceived opinion by the court about how the case should be decided, and that the jury was the only judge of the facts.

*Howard*, 2018 WL 842893, at \*8.

16

The Michigan Court of Appeals' decision is neither an unreasonable application of federal law nor the facts. As the Sixth Circuit recently explained:

> A defendant has a right to an impartial judge. *Tumey v. Ohio*, 273 U.S. 510, 535 (1927). When considering judicial bias claims in habeas cases, this court "look[s] to the Supreme Court's decision in *Liteky v. United States*, 510 U.S. 540, 552 (1994), to provide the standard." *Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002). In *Liteky*, the Court explained that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." 510 U.S. at 555. They may do so, however, "if they reveal an opinion that derives from an extrajudicial source," and "they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* (emphasis omitted). But "ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.* at 556.

*Walker v. Douglas*, No. 25-1215, 2025 U.S. App. LEXIS 19820, at *8–9 (6th Cir. Aug. 5, 2025).

Howard first takes issue with the lengthy exchange between the trial court and Jefferson, asserting that the sheer number of questions suggested partiality. During trial, the prosecutor played the surveillance video depicting the assault and the events leading up to it. (ECF No. 13-7, PageID.842–843.) After the parties finished their witness examinations, the trial court requested replay of the video and posed additional questions to Jefferson. (*Id.* at PageID.912–941.) The trial court sought to fill the gaps in Jefferson's testimony, particularly expanding upon the words exchanged between Howard, Jefferson, and Thomas along with their conduct. In other words, the trial court *clarified* Jefferson's testimony. And it is not unconstitutional under the Due Process Clause for a state trial judge to seek clarification from a witness in a criminal trial. *See Brown v. Palmer*, 358 F. Supp. 2d

17

648, 657 (E.D. Mich. 2005), *aff'd*, 441 F.3d 347 (6th Cir. 2006) (citation omitted). "In fact, it is proper for a judge to question a witness when necessary either to elicit the truth or to clarify testimony." *Id.* (citation omitted). And while Howard takes issue with the court ending some of its questions with, "is that right?" or "right?", the questions themselves were neutral. *See Bassett v. Horton*, No. 17-1786, 2017 WL 6820126, at *2 (6th Cir. Nov. 30, 2017) (rejecting habeas petitioner's judicial bias claim because the judge's questioning of prosecution witnesses, even if extensive, did not "reflect the degree of bias or partiality required to trigger any due process concerns"). So Howard has not established a due process violation on this basis.

Howard next argues that the trial court violated his right to a fair trial by asking questions that invalidated his self-defense theory and suggested that Howard had a "duty to retreat." (ECF No. 1, PageID.48; ECF No. 6, PageID.105.) The record shows that the trial court thoroughly questioned Howard and his significant other Wendy Alanis on whether they had the opportunity to leave before the assault occurred. For instance, the court asked Alanis: "There was not anything preventing Mr. Howard and you from getting into the Trailblazer and leaving, was there?" Alanis responded, "No." (ECF No. 13-8, PageID.1213.) The court followed up: "And had that occurred, this incident would have never occurred . . . would it?" Alanis testified, "I don't know." (*Id.*) The trial court posed similar questions to Howard, asking: "But instead of pumping the gas, you then approached these African-American males, is that true?" Howard responded, "Yes, sir. I approached the one." (ECF No. 13-9, PageID.1297–1298.)

True, the trial judge's questions may have pointed out weaknesses in Howard's defense. But the Supreme Court has never held that the manner in which a judge questions a defendant is so indicative of actual bias that it rises to the level of judicial bias such that it qualifies as structural error. *See Elizondo v. Bauman*, 674 F. App'x 561, 562 (6th Cir. 2007) (noting that "no United States Supreme Court holding supports Petitioner's claim of judicial bias flowing from a judge's interrogation of a criminal defendant at trial"). And as discussed, it is proper for a judge to ask questions that elicit the truth. *See Brown*, 358 F. Supp. 2d at 657. While the trial court's questions may have prompted unfavorable testimony, Howard has not shown that the court was biased or advocated for the prosecution by questioning him and Alanis as to why they did not leave the gas station earlier.

Additionally, the trial judge specifically instructed the jury that the court's "comments, rulings, questions and instructions are . . . not evidence" and that "[i]f you believe that I have an opinion about how you should decide this case, you must pay no attention to that opinion. You are the only judges of the facts, and you should decide this case from the evidence." (ECF No. 13-9, PageID.1341.) And jurors are presumed to follow a trial court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *see also United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it.").

Lastly, Howard asserts that the trial court demonstrated hostility toward Howard's counsel. (ECF No. 1, PageID.50.) In support, Howard points to excerpts

19

from the state-court record where the trial court had either directed defense counsel to move the testimony along or clarify his questioning. He also points to moments where the court expressed impatience with counsel. (*Id.*) But again, this is common court management. *See Liteky*, 510 U.S. at 555–56 (1994) (finding "expressions of impatience, dissatisfaction, annoyance, and even anger" are insufficient to show bias). Indeed, the court exhibited similar impatience and annoyance toward the prosecutor and its witnesses. (*See* ECF No. 13-7, PageID.958 (directing the prosecutor to "move on!" in his questioning); ECF No. 13-7, PageID.927 (commanding the prosecution's witness to "[a]nswer my question!").) So as acknowledged by the appellate court, the trial court's expressions of annoyance and impatience were "balanced," which runs against Howard's claim of judicial hostility. *Howard*, 2018 WL 842893, at *8. And while some of the trial court's comments may be construed as curt or critical, Howard has not demonstrated that such comments "reveal[ed] such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* at 555. Thus, Howard is not entitled to relief on this claim.

### 4. Prejudicial Photographic Evidence (Claim 4)

In his fourth claim, Howard argues that the trial court abused its discretion by admitting graphic photographs of Jefferson's injuries in violation of MRE 403. The Michigan Court of Appeals rejected this argument, stating that "the overall impression of the photographs is neither shocking nor gruesome. The photographs were relevant to show the injuries Howard inflicted on Jefferson." *Howard*, 2018 WL 842893, at *8.

"In general, alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review," but habeas relief may be granted if "the state's evidentiary ruling is so fundamentally unfair that it rises to the level of a due-process violation." *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012) (quoting *Collier v. Lafler*, 419 F. App'x 555, 558 (6th Cir. 2011)); *see Estelle*, 502 U.S. at 67–68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Howard has failed to show that any error in the trial court's application of Michigan evidentiary law was "sufficiently egregious to amount to a denial of . . . due process." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). More specifically, the photographs were relevant and admissible under state law. They depicted the extent, severity, and nature of Jefferson's injuries. The Sixth Circuit has observed that "[t]he Supreme Court has never held (except perhaps within the capital sentencing context) that a state trial court's admission of relevant evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F.3d 536, 551 (6th Cir. 2012) (emphasis original). Moreover, the Sixth Circuit has held that a challenge to the admission of a gruesome photograph does not present a question of constitutional magnitude. *See Cooey v. Coyle*, 289 F.3d 882, 893–94 (6th Cir. 2002) (citing *Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997)). So Howard fails to establish that the admission of the photographs was erroneous, violated his right to due process, or otherwise rendered his trial fundamentally unfair. Habeas relief is thus unwarranted on this claim.

21

### 5. Ineffective Assistance of Counsel (Claims 5 and 9)

In his fifth and ninth claims, Howard argues that his counsel was ineffective in numerous ways. (ECF No. 1, PageID.57–63; ECF No. 6, PageID.113–132, 138–139.) None entitle him to relief.

An ineffective assistance of counsel claim has two components. A petitioner must show (1) that counsel's performance was deficient, and (2) that the deficiency resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is judged under a "highly deferential" reasonableness standard. *Id.* at 688–89. And prejudice occurs only when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Simply put, the *Strickland* standard is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013)).

And when a state court addresses an ineffective assistance of counsel claim on the merits, obtaining relief is even more difficult. "The standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (citations and quotation marks omitted). This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). Thus, "the question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105; *see also Cullen*, 563 U.S. at 188

(explaining that the "unreasonable application prong" can be satisfied only if a petitioner shows "there was no reasonable basis" for the state court's decision).

### a. Failure to Withdraw

Howard first asserts that his counsel performed deficiently by continuing to represent him after being discharged. (ECF No. 1, PageID.59.) The Michigan Court of Appeals appropriately rejected this claim on the basis that "there [was] no evidence that defense counsel was ever discharged or withdrew from representing Howard." *Howard*, 2018 WL 842893, at *9. While Howard filed letters with the trial court seeking new counsel, at no point did counsel ever withdraw from the case. And when defense counsel informed the trial court of Howard's indigency, he explicitly stated he "was not asking to withdraw" and Howard did not object to his continued representation. (ECF No. 13-5, PageID.623.) The state court record shows that counsel represented Howard from the preliminary examination through sentencing. This representation is not a *Strickland* violation.

### b. Failure to Object to Leading Questions

Howard next argues that counsel was ineffective for failing to object to the leading questions the prosecutor and trial court put to Thomas and Jefferson during the surveillance video's showing. The Michigan Court of Appeals rejected this claim, reasoning that the "main focus" of the questions was "to correlate their statements" and that "[t]he leading portion of the questions was not to ascertain information, but to reference specific moments in the altercation." *Howard*, 2018 WL 842893, at *9.

23

The Michigan Court of Appeals did not unreasonably apply *Strickland*. As an initial matter, the Sixth Circuit recently reiterated its holding that a "failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial to a client that failure to object essentially defaults the case to the state." *Gaither v. Lane*, No. 24-5942, 2026 U.S. App. LEXIS 7366, at * 19 (6th Cir. Mar. 12, 2026) (quoting *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006)). That is certainly not the situation here. In fact, Howard fails to even identify any specific questions that he believes defense counsel should have objected to. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). And, in any event, defense counsel did object to some of the prosecutor's leading questions during Thomas' testimony, which the trial court both sustained and overruled. (*See* ECF No. 13-7, PageID.973–974, 977.) So the record clearly shows that counsel objected to leading questions. Howard is thus not entitled to relief on this ground.

### c. Failure to Object to Trial Court's Comments

Next, Howard argues that defense counsel was ineffective for failing to object to the trial court's questions and commentary supposedly discrediting his theory of self-defense. This Court already determined that the trial court's questions were not improper. So any objection would have been meritless. *See Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim."). And to the extent this conveyed any partiality, the court's jury instructions

24

cured any potential prejudice. (ECF No. 13-9, PageID.1341.) Howard has not shown that counsel was ineffective for failing to object on this basis.

### d. Failure to Request Missing Witness Instruction

Next, Howard argues that his counsel was ineffective for failing to request a missing witness jury instruction. Under Michigan law, a missing witness instruction may be appropriate when the prosecution does not show due diligence in locating a missing witness. *See People v. Perez*, 670 N.W.2d 655 (Mich. 2003). Here, the Michigan Court of Appeals denied relief on this claim, ruling that the instruction was not required because the prosecution provided reasonable assistance in attempting to locate unendorsed witnesses pursuant to Mich. Comp. Laws § 767.40a(5). *Howard*, 2018 WL 842893, at *10.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. According to the court, "a missing witness instruction would have been appropriate only if Howard had requested reasonable assistance in locating and producing the witnesses for trial, and the prosecution failed to provide reasonable assistance." *Id.* But that was not the case. Plus, the state court's ruling on the applicability of jury instructions under Michigan law is controlling on habeas review. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Any jury instruction related to a missing witness would have simply been futile. *See, e.g.*, *Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010) ("[C]ounsel cannot be ineffective for a failure to raise an issue that lacks merit"); *Coley v. Bagley*, 706 F.3d

741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial").

### e. Failure to Object to Self-Defense Instruction

Howard also argues that his counsel failed to request a self-defense jury instruction that correctly reflected Michigan law. (ECF No. 6, PageID.131.) In rejecting this claim, the Michigan Court of Appeals ruled that "the trial court properly instructed the jury on self-defense, including [on a] duty to retreat." *Howard*, 2018 WL 842893, at *7. Again, this Court will not disturb a state court's ruling on a matter of state law. *Bradshaw*, 546 U.S. at 76. Because the trial court's instructions were proper, Howard's counsel was not ineffective for failing to raise a futile objection. *Bradshaw*, 591 F.3d at 523.

### f. Failure to Pursue Interlocutory Appeal

Lastly, Howard faults his counsel for not pursuing an interlocutory appeal after the trial court denied his motion to quash the information. More specifically, Howard asserts that there was insufficient evidence for the district court to bindover the charges to the circuit court related to Desmond Thomas. This claim was rejected on collateral review as follows:

> [B]ecause Mr. Thomas was present the entire time, fought with defendant to try to get him off, and Mr. Jefferson testified that he did [not?] know who was swinging at who, circumstantial evidence and reasonable inferences arising from the evidence indicated that the defendant did assault Mr. Thomas. Therefore, even if the defendant were able to raise this issue in his current motion, his arguments are without merit.

(ECF No. 13-17, PageID.1514.)

The state-court record shows that Jefferson's testimony at the preliminary examination hearing, as well as the surveillance video, supported bindover, so any interlocutory appeal would have been futile. *See Coley*, 706 F.3d at 752. Moreover, Howard cannot show prejudice because the evidence supported his conviction. *Harrison v. Carl*, No. 21-1760, 2022 WL 17228815, at *5 (6th Cir. June 27, 2022). Howard fails to establish a *Strickland* violation. Accordingly, he is not entitled to habeas relief with respect to this claim.

### 6. Prosecutorial Misconduct (Claim 6)

In his sixth claim, Howard asserts that the "prosecutor's failure to comply with Mich. Comp. Laws § 767.40a(5) and provide assistance in locating and producing witnesses" violated his right to a fair trial. The Michigan Court of Appeals rejected that claim on plain error review, concluding that "there [was] no record evidence supporting Howard's claim that the prosecutor failed to provide reasonable assistance in locating and serving these witnesses in advance of trial." *Howard*, 2018 WL 842893, at *10.

The Michigan Court of Appeals' decision is neither an unreasonable application of federal law nor the facts. In his petition, Howard states that the prosecution identified two other witnesses that it did not intend to call at trial: Habib Al-Alladai and Ahmed Alisa. Howard asserts that these individuals were working at the Clark Gas Station when the underlying incident occurred and, therefore, were critical *res gestae* witnesses. So the prosecution, Howard says, had a duty to investigate and produce these witnesses. In sum, the crux of Howard's argument is

27

that the prosecutor failed to comply with his statutory obligation to produce *res gestae* witnesses. But this is not a basis for federal habeas relief. *Brown v. Burton*, No. 18-2145, 2019 WL 4865392, at *2 (6th Cir. Apr. 9, 2019) (citing *Atkins v. Foltz*, No. 87-1341, 1998 WL 87710, at *2 (6th Cir. Aug. 24, 1988)) (per curiam); *see also Collier v. Lafler*, 419 F. App'x 555, 559 (6th Cir. 2011) ("Michigan's requirement that prosecutors produce res gestae witnesses is a matter of state law, and its enforcement is outside the scope of our review."). Thus, Howard's prosecutorial misconduct claim does not provide relief.

### 7. Cumulative Effect (Claim 7)

Howard asserts in claim seven that the cumulative effect of all his asserted errors denied him his fundamental right to a fair trial. (ECF No. 1, PageID.66–67.) However, "[t]he Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief." *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002) (citing *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002)); *see also Kennard v. Bauman*, No. 23-1984, 2024 U.S. App. LEXIS 10641, at *3 (6th Cir. May 1, 2024) (explaining that "[w]e have repeatedly held that the Supreme Court has not clearly established a cumulative-error theory of relief"); *Webster v. Horton*, No. 19-1553, 795 F. App'x 322, 328 (6th Cir. Oct. 24, 2019) (same). And because the individual claims are all essentially meritless, Howard cannot show that the cumulative error violated his constitutional rights. *See Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). He is therefore not entitled to relief.

## 8. Double Jeopardy (Claim 10)

In his tenth claim, Howard contends that his convictions for two counts of assault and battery, along with his other convictions for assault with intent to commit murder, assault with intent to do great bodily harm less than murder, and felonious assault violate Double Jeopardy. This claim, though, is moot. Howard prevailed on this claim on collateral review. The trial court agreed with Howard and vacated his two assault and battery convictions. (ECF No. 13-17, PageID.1507–1509, 1515.) Because Howard has already received his requested relief on this claim, this Court cannot provide further relief.

## 9. Inconsistent Verdict (Claim 11)

In his eleventh claim, Howard argues that the jury's verdict was inconsistent because they convicted him of assault with intent to commit murder, assault with intent to do great bodily harm less than murder, felonious assault, and assault and battery. Howard believes the elements of these offenses are mutually exclusive and required the jury to return a verdict for only one of these offenses, not all. (ECF No. 6, PageID.134.) But that challenge is generally not cognizable on federal habeas review, and Howard has not provided any basis upon which the Court could review the claim. *See, e.g.*, *Freeman v. Lebanon Correctional Inst., Superintendent*, 1999 WL 801573 at * 2 (6th Cir. Sept. 28, 1999) (noting that an "inconsistency in a jury's verdict does not warrant habeas corpus relief"); *Cunningham v. Palmer*, 2010 WL 891152, at *5 (E.D. Mich. Mar. 10, 2010) (explaining that "[a]ny alleged inconsistency in a state

29

court verdict is . . . a non-cognizable claim on federal habeas review"). Howard is not entitled to relief on this claim.

### 10. Ineffective Assistance of Appellate Counsel (Claim 12)

In his twelfth claim, Howard asserts that his appellate counsel was ineffective for failing to raise the claims asserted in his motion for relief from judgment on direct appeal. The trial court rejected this claim on collateral review. (ECF No. 13-17, PageID.1513–1514.)

The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel on an appeal of right. *See Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985). Nonetheless, court-appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). And a habeas court reviewing an ineffective assistance of appellate counsel claim must defer twice: first to appellate counsel's decision not to raise an issue, and second to the state court's determination that appellate counsel was not ineffective. *Woods v. Etherton*, 578 U.S. 113, 119 (2016) (per curiam).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751–52). "Generally, only when ignored issues are clearly stronger than

those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). In other words, appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue that was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Howard fails to show that his appellate counsel's performance—including the decision to raise the claims presented in an appellate brief and omit others—fell outside the wide range of professionally competent assistance. Appellate counsel filed a 50-page brief, raising seven claims for relief (ECF No. 13-18, PageID.1634–1694), which Howard now raises as the first seven claims in his petition here (ECF No. 1, PageID.12). To the extent Howard alleges that appellate counsel should have raised the claims asserted on collateral review, the Court has already determined that these claims lack merit. And "appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001)). Conclusory allegations of ineffective assistance of appellate counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman,* 178 F.3d at 771. So this claim fails too.

### 11. Habitual-Offender Notice (Claim 13)

Lastly, Howard argues that he is entitled to resentencing because he was not provided with notice of the prosecution's intent to charge him with being a fourth

31

habitual offender in accordance with Mich. Comp. Laws § 769.13. (ECF No. 6, PageID.140–144.) Howard further asserts that appellate counsel was ineffective for failing to raise this claim on direct appeal. (*Id.*) Respondent argues that this claim is barred by the statute of limitations because Howard did not raise it in his initial petition. (ECF No. 12, PageID.522.) But the statute of limitations is not a jurisdictional bar. *See Smith v. State of Ohio Dept. of Rehabilitation*, 463 F.3d 426, 429 n.2 (6th Cir. 2006). So the Court will address the merits of this claim.

Howard raised this argument in his motion for relief from judgment, which the trial court rejected, concluding that even if Howard was not served with the offender notice in accordance with § 769.13, any error was harmless because "the habitual notice was contained in the complaint and felony information . . . [and] Mr. Howard was notified on the record at the preliminary examination that he was being charged as a habitual fourth offender." (ECF No. 13-17, PageID.1512.) There is no basis for this Court to upset this ruling.

For starters, Howard's claim that he did not receive notice that complied with the Michigan habitual offender statute is not cognizable on federal habeas review. *See, e.g.*, *Tolbert v. LeCureaux*, 811 F. Supp. 1237, 1240–41 (E.D. Mich. 1993); *see also Threat v. Harry*, No. 17-12465, 2018 WL 2431707, at *7 (E.D. Mich. May 30, 2018) (same); *MacArthur v. Curtin*, No. 13-11307, 2014 WL 3767835, at *15–16 (E.D. Mich. July 31, 2014) (collecting cases). Again, it is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Estelle*, 502 U.S. at 67–68, 72.

Additionally, the record does not support Howard's argument. Due process requires that a defendant be given reasonable notice and an opportunity to be heard on such a sentencing enhancement. *See Oyler v. Boles*, 368 U.S. 448, 452 (1962). The state-court record supports the conclusion that Howard received adequate notice during his criminal proceedings. The issue of the habitual offender enhancement was raised before the start of the preliminary examination. (*See* ECF No. 13-2, PageID.557 ("This is habitual offender, fourth offense notice with mandatory 25 year sentence[.]").) It was again acknowledged by the prosecutor and the trial court at Howard's sentencing. (ECF No. 13-10, PageID.1389–1390.)

Moreover, Howard had the opportunity to challenge his sentencing enhancement during the proceedings before the state trial court. Howard's habitual-offender status was discussed in some detail during sentencing, and his attorney did not dispute the application of the enhancement. (*Id.*) Additionally, Howard later filed a motion for resentencing raising the same argument (*see* ECF No. 13-18, PageID.1612), which the trial court denied (ECF No. 13-11, PageID.1412). The state court did not unreasonably apply governing law in rejecting this due process claim. *See Oyles*, 368 U.S. at 452; *see also Brown v. Nagy*, No. 19-1847, 2019 WL 7761722, at *8 (6th Cir. Dec. 16, 2019) (denying a certificate of appealability on similar habitual-offender-notice claims). Howard's related ineffective-assistance-of-appellate-counsel claim also fails because counsel is not ineffective for failing to raise a meritless issue. *Shaneberger*, 615 F.3d at 452.

## IV. Conclusion

For the foregoing reasons, the Court DENIES Howard's petition for a writ of habeas corpus. A separate order will issue on a certificate of appealability and proceeding *in forma pauperis* on appeal.

IT IS SO ORDERED.

Dated: March 17, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE